UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
MICHAEL MORRONE, derivatively on behalf
of AROTECH CORPORATION,

                Plaintiff,

           - against –

ROBERT S. ERLICH, STEVEN ESSES, JAY
M. EASTMAN, JACK E. ROSENFELD,
LAWRENCE M. MILLER, EDWARD J.
BOREY, SEYMOUR JONES, ELLIOT
SLOYER, MICHAEL E. MARRUS, AVIHAI
SHEN,

                Defendants,

           - and –

AROTECH CORPORATION,

                Nominal Defendant.
-----------------------------------------------------------------x

**MEMORANDUM & ORDER**

09 CV 1910 (RJD) (VVP)

DEARIE, Chief Judge.

      Shareholder plaintiff Michael Morrone, derivatively on behalf of Arotech Corporation ("Arotech" or the "Company"), brings this action against ten current and former Arotech directors and officers for breach of fiduciary duty arising from the Company's public disclosures about the financial prospects of a subsidiary, Armour of America ("AoA"), between November 2004 and November 2005 (the "Relevant Period"). The Court exercises subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(3). Because plaintiff did not present Arotech's Board of Directors with a demand for suit before filing his complaint (the "Derivative Complaint"), and does not adequately explain why such a demand would have been futile, the Court dismisses the Derivative Complaint without prejudice.

## Background

### The parties

Arotech is a Delaware corporation with headquarters in Michigan. Arotech provides defense and security products for the military, law enforcement and security markets worldwide. Plaintiff, a Pennsylvania resident, has owned common stock in Arotech throughout the Relevant Period and to the present.

The individual defendants include all members of Arotech's Board of Directors and certain officers who served during the Relevant Period. Defendant Ehrlich, the Company's Chief Executive Officer ("CEO"), has served as Chairman of the Board since January 1993. Defendant Esses, the Company's Chief Operating Officer ("COO"), has been a director since July 2002. Defendant Shen, not an Arotech Board member, was the Company's Chief Financial Officer ("CFO") until March 2006. Defendants Eastman, Borey, Jones, Rosenfeld and Miller were outside directors during the Relevant Period.

Arotech's current Board of Directors is comprised of officers Ehrlich and Esses, directors Eastman, Borey and Jones, and individual defendants Sloyer and Marrus, outside directors appointed to Arotech's Board in October 2007.

### Factual allegations

The Complaint's factual allegations are nearly identical to those appearing in a prior Consolidated Amended Class Action Complaint (the "Securities Complaint"), dated September 28, 2007, asserting federal securities claims under Securities Exchange Act Sections 10(b) and 20(a) against Arotech and individual defendants Ehrlich, Esses and Shen. See Akerman v. Arotech Corp., 608 F. Supp. 2d 372 (E.D.N.Y. 2009).

Plaintiff's allegations concern the business difficulties of Arotech subsidiary AoA, a company specializing in body and vehicle armor, which Arotech acquired for $19 million in cash in August 2004. At the time of acquisition, AoA possessed $8.5 million in net assets, leading Arotech to allocate the remaining $10.5 million of the purchase price to goodwill. On August 26, 2004, the United States government terminated a contract with AoA to armor approximately 20 helicopters. Armour of Am. v. United States, 69 Fed. Cl. 587, 589 (2006). Because the government believed that AoA could not meet the agreed-upon weight or ballistics specifications within the time remaining for performance, the government designated this cancellation a "termination for default" ("T4D"). Id. The T4D allegedly restricted AoA's eligibility to win future government business and caused AoA to lose millions of dollars in helicopter armoring contracts alone. (Compl. ¶ 22.)

Plaintiff alleges that defendant COO Esses and "other members of the senior management of Arotech" discussed the difficulties posed by the T4D in procuring government business. (Id. ¶ 23.) According to the Derivative Complaint, AoA's sales declined as predicted, resulting in excess inventory of time-sensitive manufacturing materials. Due to the low priority of AoA's contracts, moreover, suppliers allegedly ceased providing sufficient quantities of other materials, stripping AoA of the ability to compete for future business. Plaintiff further alleges that due to "[p]oor internal inventory controls," AoA was unable to complete the number of products required by some contracts despite an excess of component parts. (Id. ¶ 26.) Arotech management allegedly received periodic updates on AoA's inventory and sales, including "information such as the probability of orders for AoA's products," and could access AoA software to run reports. (Id. ¶ 27.)

While the T4D caused problems internally, Arotech painted a rosy picture externally. In a November 2004 press release, defendant CEO Ehrlich stated that Arotech "'ha[d] added several excellent companies to our portfolio, and these companies are contributing to our growth.'" (Id. ¶ 28.) In a March 2005 press release, Ehrlich touted the prior year's "'record-high revenues'" and stated that "[t]he subsidiaries that we acquired in 2004 are now fully integrated into the Company and we have begun to benefit from the[se] synergies.'" (Id. ¶ 31.) The Company also stated that "'no indication of goodwill impairment was identified.'" (Id. ¶ 32.) In its annual report for the 2004 fiscal year, however, Arotech explained that the government could "terminate or modify any of its contracts with us either for its convenience or if we default by failing to perform under the terms of the applicable contract," and that "[a] termination arising out of our default could expose us to liability and have a material adverse effect on our ability to re-compete for future contracts." Arotech Corp., 2004 Annual Report on Form 10-K, at 63 (filed Mar. 31, 2005).

In August 2005, the alleged truth regarding AoA's financial prospects began to emerge. Upon reporting decreased quarterly profit margins and increased operating losses compared with a year earlier, Arotech revealed that it had written down $2.4 million for impairment of AoA's goodwill and other intangible assets. Defendant Ehrlich called AoA's performance "'below our expectations'" but projected stronger results for AoA during the second half of 2005 under new leadership. (Id. ¶ 40.) In a September 2005 press release, Arotech announced that it had privately secured $17.5 million in convertible debt financing from institutional investors, but also "noted that AoA's performance was disappointing and hurting company earnings." (Id. ¶ 42.) On November 14, 2005, Arotech announced significantly reduced quarterly revenues that the Company stated were "'largely attributable'" to AoA's underperformance and which included an

4

$8.7 million impairment "reflecting a reevaluation of AoA's value." (Id. ¶ 44.) On that same date, AoA's newly appointed president resigned.

## The consolidated securities action

Arotech's failure to disclose the T4D to shareholders gave rise to a federal securities action for alleged violations of Exchange Act Sections 10(b) and 20(a) by Arotech and officers Ehrlich, Esses and Shen. In a Memorandum and Order dated March 30, 2009, this Court denied defendants' motion to dismiss the Securities Complaint. Akerman, 608 F. Supp. 2d 372. That opinion discusses the circumstances surrounding Arotech's acquisition of AoA in greater detail, including the fact that, in December 2004, AoA challenged the T4D in a lawsuit against the United States Naval Air Systems Command in the Court of Federal Claims.[1] In ruling on the securities motion, this Court "readily conclude[d] that the nature of the termination" – i.e., that it was "for default" – was material information which Arotech omitted from public disclosures. Id. at 383. The Court also held that the sequence of events "support[ed] the inference of a deliberate, considered, and knowing decision to withhold that crucial detail about AoA," and that the individual defendants, all senior management at Arotech, knew or had access to the undisclosed information. Id. at 384. On June 23, 2010, the Court approved a $2.9 million settlement of all claims by the plaintiff class against Arotech and the individual defendants.

## The derivative claims

On May 6, 2009, just over one month after this Court denied the motion to dismiss the Securities Complaint, plaintiff filed the Derivative Complaint asserting claims on Arotech's behalf against the defendants in the securities action and against Arotech's past and present

---

[1] By Opinion issued January 10, 2011, the Court of Federal Claims held that the T4D was justified, notwithstanding that the government had knowingly accepted a bid by AoA that did not conform to the specifications appearing in the contract or in the government's earlier request for proposal. See Armour of Am. v. United States, — Fed. Cl. —, 2011 WL 86475 (2011).

directors. Much like the Securities Complaint, plaintiff in the Derivative Complaint asserts that defendants "created an unrealistic positive assessment of Arotech and its business, prospects and operations, causing the Company's common stock to be overvalued and artificially inflated at all relevant times." (Compl. ¶ 47.) During this time, Arotech allegedly failed to disclose "the T4D and its [e]ffect on AoA's ability to obtain new business with the U.S. government." (Id. ¶ 48.)

Based on this alleged nondisclosure, plaintiff concludes that defendants "intentionally or recklessly breached their fiduciary duties of loyalty to" Arotech by not "exercis[ing] reasonable and prudent supervision over the management, policies, practices, and controls of the Company" during the Relevant Period. (Id. ¶¶ 56, 73.) Plaintiff alleges that all defendants "had access to the undisclosed information" about AoA, but failed to take action to correct or prevent securities violations. (Id. ¶¶ 56-57.) Alternatively, plaintiff alleges that defendants failed to "implement an adequate system of controls" such that no director or officer "would make materially false or unreliable statements about Arotech." (Id. ¶ 56.) Plaintiff also alleges that defendants "fail[ed] to make proper, timely adjustments to" AoA's asset values and impairment costs, which meant that "the Company's financial statements and reports were not prepared in accordance with GAAP and SEC rules." (Id. ¶ 33.) This "systemic misconduct" allegedly has caused a stock price decline, litigation expenses "and other significant costs to the Company." (Id. ¶ 72.)

## Legal standard

"The derivative form of action permits an individual shareholder to bring 'suit to enforce a corporate cause of action against officers, directors, and third parties.'" Kamen v. Kemper Fin. Servs., Inc., 500 U.S. 90, 95 (1991) (quoting Ross v. Bernhard, 396 U.S. 531, 534 (1970)). "The decision whether to initiate or pursue a lawsuit on behalf of the corporation is generally within the power and responsibility of the board of directors." In re Citigroup, Inc. S'holder Deriv.

Litig., 964 A.2d 106, 120 (Del. Ch. 2009) (citing 8 Del. C. § 141(a)). As such, Federal Rule of Civil Procedure 23.1 requires that the complaint in a derivative action "state with particularity any effort by the plaintiff to obtain the desired action from the directors or comparable authority" or "the reasons for . . . not making the effort." Fed. R. Civ. P. 23.1(3).

Prior to filing the Derivative Complaint, plaintiff did not demand that Arotech's Board of Directors bring or otherwise authorize this action. "Where, as here, a plaintiff does not make a pre-suit demand on the board of directors, the complaint must plead with particularity facts showing that a demand on the board would have been futile." In re Citigroup, 964 A.2d at 120. "But although Rule 23.1 clearly contemplates both the demand requirement and the possibility that demand may be excused, it does not create a demand requirement of any particular dimension." Kamen, 500 U.S. at 96. Rather, "[t]he substantive law which determines whether demand is, in fact, futile is provided by the state of incorporation of the entity on whose behalf the plaintiff is seeking relief." Scalisi v. Fund Asset Mgmt., L.P., 380 F.3d 133, 138 (2d Cir. 2004).

Because Arotech is a Delaware corporation, the parties correctly assume that Delaware law applies. To show demand futility for a claim of board inaction, a plaintiff must allege specific facts that "create a reasonable doubt that, as of the time the complaint is filed, the board of directors could have properly exercised its independent and disinterested business judgment in responding to a demand." Rales v. Blasband, 634 A.2d 927, 933-34 (Del. 1993). "Such reasonable doubt must be raised as to a majority of the board of directors sitting at the time the complaint is filed." In re Morgan Stanley Deriv. Litig., 542 F. Supp. 2d 317, 322 (S.D.N.Y. 2008); see also Rales v. Blasband, 971 F.2d 1034, 1054 (3d Cir. 1992) (describing the issue as "whether the present board is or is not disabled from exercising its right and duty to control

7

corporate litigation"). Under state or federal law, however, "Rule 23.1 is not satisfied by conclusory statements or mere notice pleading." Brehm v. Eisner, 746 A.2d 244, 254 (Del. 2000).

Arotech's Certificate of Incorporation, moreover, includes an exculpatory provision shielding directors from personal liability to the Company, except as may result from "any breach of the director's duty of loyalty to the corporation" or from "acts or omissions not in good faith or which involve intentional misconduct or a knowing violation of law." Amended & Restated Certificate of Arotech ¶ 10 (formerly Electric Fuel Corp.) (filed Mar. 2, 1994).[2] "Where directors are contractually or otherwise exculpated from liability for certain conduct, 'then a serious threat of liability may only be found to exist if the plaintiff pleads a non-exculpated claim against the directors based on particularized facts.'" Wood v. Baum, 963 A.2d 136, 141 (Del. 2008) (quoting Guttman v. Huang, 823 A.2d 492, 501 (Del. Ch. 2003)).

## Discussion

On the date on which the Derivative Complaint was filed, Arotech's Board of Directors consisted of Chairman and CEO Ehrlich, COO Esses and outside directors Eastman, Borey, Jones, Sloyer and Marrus. Plaintiff does not argue that any of these directors lacked independence, such as by basing corporate decisions on "'extraneous considerations or influences.'" In re J.P. Morgan Chase & Co. S'holder Litig., 906 A.2d 808, 821 (Del. Ch. 2005) ((quoting Aronson v. Lewis, 473 A.2d 805, 816 (Del. 1984)). Nor does plaintiff allege that any of these directors "receive[d] a personal financial benefit from" the Company's acquisition of or subsequent disclosures about AoA. Rales, 634 A.2d at 926. Rather, plaintiff argues that the directors are interested, as that term is used in evaluating demand futility, because a majority of

---

[2] "The court may take judicial notice of the certificate in deciding a motion to dismiss." In re Baxter Int'l, Inc. S'holders Litig., 654 A.2d 1268, 1270 (Del. Ch. 1995).

directors faces "'a substantial likelihood'" of personal liability arising from the events alleged in the Derivative Complaint. Id. (quoting Aronson, 473 A.2d at 815). The Court finds this conclusion to be unsupported by the allegations taken as a whole.

Material misstatements

Like the Securities Complaint, the Derivative Complaint recites several public statements attributable to Arotech and CEO Ehrlich, each of which allegedly was "materially false or misleading when made." (Compl. ¶ 33.) Plaintiff alleges that defendants, due to their positions within the Company, "had access to the undisclosed information" regarding AoA, including the T4D's existence. (Id. ¶ 57.) Plaintiff correctly asserts – and defendants do not contest – that such allegations of securities fraud excuse demand with respect to Company officers Ehrlich and Esses, who were defendants to the securities action. Although the Company's suing these directors no longer would "compromise the defense of the federal securities action," which has since settled, "[t]he complaint in that action survived a motion to dismiss under the rigorous standards for pleading securities fraud." Pfeiffer v. Toll, 989 A.2d 683, 691 (Del. Ch. 2010). Plaintiff's allegations, like those in the Securities Complaint, if true, create a substantial likelihood that Ehrlich and Esses may be individually liable for this non-exculpated conduct. At a minimum, a reasonable doubt exists regarding whether Ehrlich and Esses could impartially consider a demand to authorize a lawsuit by Arotech to recover the costs associated with the litigation.

For the purpose of evaluating demand futility, the remaining five Arotech Board members cannot face a substantial likelihood of liability for failing to disclose "the T4D and its [e]ffect on AoA's ability to obtain new business with the U.S. government" or for failing "to correct the Company's public announcements" on these topics. (Compl. ¶¶ 48, 74.) These

allegations simply restate the prior claim for securities fraud against Arotech, which is a direct, as opposed to a derivative, claim under Delaware law. See, e.g., In re ML-Lee Acquisition Fund II, L.P. Sec. Litig., 848 F. Supp. 527, 534 (D. Del. 1994) (holding that "violations of numerous securities laws" which injured plaintiffs "beyond a mere diminution in the value of the[ir]" holdings gave rise to a direct shareholder class action). Any duty to disclose material non-public information about AoA was owed to shareholders, rather than to the corporation; indeed, the Derivative Complaint hinges on the assertion that the corporation's leadership already knew (or could access) the negative information about AoA that it then failed to disclose. Further, because the misstatements allegedly "caus[ed] the Company's common stock to be overvalued and artificially inflated," (Compl. ¶ 47), any injury due to these omissions accrued to shareholders individually at the time of purchase. Accordingly, "[t]here is no compensable injury to the corporation" in this case from the mere fact of non-disclosure. Howard v. Haddad, 916 F.2d 167, 170 (4th Cir. 1990); see In re Syncor Int'l Corp. S'holders Litig., 857 A.2d 994, 997 (Del. Ch. 2004) ("[T]he duty of the court is to look at the nature of the wrong alleged, not merely at the form of words used in the complaint.").

More pressingly, the settlement of the Securities Action by a shareholder class to which plaintiff belongs bars any further legal proceedings against the five outside directors based on the misrepresentations and omissions referred to in the Securities Complaint. (Order & Final Judgment, 07 CV 1838, Dkt. #81, at 3.) "In this respect, it is important to note that none of these five defendants is even named as a defendant in the [settled] federal securities suit[]." Huang, 823 A.2d at 504. Thus, Arotech's outside directors face no likelihood of personal liability, either past or future, for committing securities fraud. For these directors, plaintiff must plead a separate theory upon which demand might be excused.

Breach of loyalty/good faith

Plaintiff alleges that the outside directors "breached their fiduciary duty of loyalty by abdicating their duty of oversight." (Compl. ¶ 74.) Specifically, the directors allegedly "face a substantial likelihood of liability in this action because of their failure, as directors, to assure that a reliable system of financial controls was in place and functioning effectively." (Id. ¶ 62.) Plaintiff's allegations fall into five categories: (1) the outside directors signed allegedly misleading public filings on Forms 10-K and 10-K/A; (2) the Company's accounting practices and inventory controls were deficient; (3) defendants were increasingly aware that AoA's performance would not meet expectations; (4) the outside directors never formally investigated the conduct underlying the Securities Complaint; and (5) the Company's post-filing public statements show that the outside directors were predisposed against plaintiff's lawsuit. These allegations do not show that any, much less a majority, of the five Arotech outside directors serving in May 2009 could not properly evaluate a demand.

*Sloyer and Marrus*

Outside directors Sloyer and Marrus, each of whom joined Arotech's Board of Directors after the Relevant Period, cannot be held liable for acts or omissions that occurred before they became affiliated with the Company. With no allegation that either individual lacks independence or suffers from a conflict of interest regarding the AoA acquisition, Sloyer and Marrus epitomize the type of director who could impartially consider whether bringing suit against the other individual defendants would be in Arotech's best interest. Plaintiff's improper naming of Sloyer and Marrus as defendants does not alter this reality, as "[d]emand is not excused simply because plaintiff has chosen to sue all directors." Grimes v. Donald, 673 A.2d 1207, 1216 n.8 (Del. 2006), overruled on other grounds by Brehm, 746 A.2d 244. "To hold

otherwise would permit plaintiffs to subvert the particularity requirements of Rule 23.1 simply by designating all the directors as targets." Id.

*Eastman, Borey and Jones*

As plaintiff correctly contends, the Derivative Complaint's allegations need only show that two of Arotech's three remaining outside directors are interested for demand to be excused. Although outside directors Eastman, Borey and Jones each served on Arotech's Board during the Relevant Period, these outside "directors are entitled to a presumption that they were faithful to their fiduciary duties." Beam v. Stewart, 845 A.2d 1040, 1048 (Del. 2004). To rebut this presumption and establish director liability for a failure of oversight, a plaintiff must adequately plead and then prove that "the directors utterly failed to implement any reporting or information system or controls" or that, with such a system or controls in place, the directors "disable[ed] themselves from being informed of risks." Stone v. Ritter, 911 A.2d 362, 370 (Del. 2006) (citing In re Caremark Int'l Deriv. Litig., 698 A.2d 959 (Del. Ch. 1996)). "In either case, imposition of liability requires a showing that the directors knew that they were not discharging their fiduciary obligations." Id. "The allegations must not simply demonstrate an aloof or negligent Board, but nonfeasance that rose to the level of egregiousness or bad faith." In re Merck & Co., Inc. Sec., Deriv. & ERISA Litig., 493 F.3d 393, 404 (3d Cir. 2007). "[I]ndeed, a showing of bad faith is a necessary condition to director oversight liability."[3] In re Citigroup, 964 A.2d at 123.

Plaintiff pleads no facts pertaining to Eastman, Borey or Jones individually. Instead, plaintiff argues that Eastman and Borey (but not Jones) faces a substantial likelihood of liability for signing materially misleading annual reports on Forms 10-K and 10-K/A. The allegation that

---

[3] The exculpatory provision in Arotech's charter reinforces this high standard. Where directors are exculpated from liability except for claims based on "illegal" or "bad faith" conduct, as here, a derivative plaintiff must "plead particularized facts that demonstrate that the directors acted with scienter, i.e., that they had actual or constructive knowledge that their conduct was legally improper." Wood, 963 A.2d at 141.

12

independent directors signed misleading SEC filings, however, adds little to the demand futility analysis. See Seminaris v. Landa, 662 A.2d 1350 (Del. Ch. 1995) (refusing to find that "three of the directors [who] signed a misleading 10-K" faced a substantial likelihood of liability for failing to prevent the Board Chairman and CEO "from misrepresenting the corporation's financial condition").

Although it is conceivable that Eastman, Borey or Jones had notice of a "red flag" signaling AoA's possible downfall – namely, the existence of the T4D – due to Arotech's ongoing litigation against the government, the Derivative Complaint does not support "the significant inference that the Directors had constructive knowledge that an alleged failure to respond to the 'red flag[]' would be a breach of their fiduciary duties, which is required under Delaware law." In re Intel Corp. Deriv. Litig., 621 F. Supp. 2d 165, 174 (D. Del. 2009). Plaintiff alleges that only senior management, rather than the Board of Directors, discussed the difficulties posed by the T4D in obtaining government business. The Derivative Complaint contains "no allegations as to how often and by whom the Board was advised regarding the 'red flag[],'" id., or the contents of any such discussions if they occurred.

Nor does the assertion that Arotech did not make timely adjustments to AoA's asset values or impairment costs imply that the outside directors face a substantial likelihood of liability for these purported accounting shortcomings. Despite the fact that Borey and Jones allegedly served on Arotech's Audit Committee, plaintiff fails "to allege with particularity any facts from which it could be inferred that particular directors knew or should have been on notice of alleged accounting improprieties, and any facts suggesting that the board knowingly allowed or participated in a violation of law." Wood, 953 A.2d at 143; see also Huang, 823 A.2d at 506-07 (requiring allegations that "the audit committee had clear notice of serious accounting

irregularities and simply chose to ignore them or, even worse, to encourage their continuation"). On the scant facts alleged, Arotech's not declaring an impairment of AoA's goodwill until late 2005 cannot support a finding that the outside directors acted egregiously by not causing the Company to incorporate the ultimate effects of the T4D into its earlier financial statements.

Plaintiff's allegations about Arotech's internal controls are similarly deficient. Plaintiff states that "internal control problems were present throughout AoA." (Compl. ¶ 26.) These allegations say nothing about controls at Arotech, let alone "specify how the board's oversight mechanisms were inadequate or how the director defendants knew of these inadequacies and consciously ignored them." In re Citigroup, 964 A.2d at 128. In fact, plaintiff alleges that Arotech management kept itself informed regarding AoA's inventory issues and could access the subsidiary's sales projections. Plaintiff does not connect these allegations to the outside directors, or attempt to overcome the principle that "directors' good faith exercise of oversight responsibility may not invariably prevent employees from . . . causing the corporation to incur significant financial liability." Stone, 911 A.2d at 373; see also In re IAC/InterActiveCorp. Sec. Litig., 478 F. Supp. 2d 574, 604 (S.D.N.Y. 2007) ("Delaware courts recognize that no rationally designed system of information and reporting 'will remove the possibility that the corporation will violate laws or regulations.'" (quoting In re Caremark, 698 A.2d at 970)).

Plaintiff's last subset of allegations fairly summarizes the Derivative Complaint's theory of the case: namely, that defendants knew or should have realized that "the acquisition of AoA, whose price exceeded Arotech's total revenues from continuing operations for the previous year, had come with a T4D of a major contract." (Pl's Opp., Dkt. #27, at 22.) Plaintiff does not challenge the acquisition itself, which the business judgment rule would protect on the facts alleged. Rather, plaintiff's primary contention appears to be that, after acquiring AoA

14

"seemingly without completing full due diligence," (Compl. ¶ 22), the Board stood by idly while AoA's performance was not proceeding according to expectations. This is just another way of saying that the Board failed to predict the extent of the T4D's impact on AoA's prospects. "The presumption of the business judgment rule, the protection of an exculpatory [charter] provision, and the difficulty of proving a Caremark claim," however, "together function to place an extremely high burden on a plaintiff to state a claim for personal director liability for a failure to see the extent of a company's business risk." In re Citigroup, 964 A.2d at 125 (dismissing oversight claim based on corporation's overinvestment in subprime mortgage-related securities for a failure to plead demand futility). "It is well established that the mere fact that a company takes on business risk and suffers losses – even catastrophic losses – does not evidence misconduct, and without more, is not a basis for personal director liability." Id. at 130.

Individual shareholders do not determine which corporate acquisitions to undertake, much less in hindsight, and claims of poor decision-making are not compensable under Delaware fiduciary law. The prerogative of whether to take this kind of gamble belongs to Arotech, and is separate from the question of whether and when the Company should have disclosed the T4D to shareholders so that Arotech's shares might be valued accordingly. The Derivative Complaint does not adequately allege what the outside directors should have done in this case to prevent injury to the corporation. Disclosing the T4D to the public cannot be the answer, since that proposed solution would have rattled investor confidence in management and resulted in the type of share price decline that prompted the Securities Complaint in the first instance. If the outside directors indeed knew of the pending litigation against the government concerning the T4D, moreover, it is conceivable that they believed or were told that the litigation had a chance of success. Fairly stated, the Court is left to speculate regarding what, if anything, the Board could

15

have or should have done to reverse Arotech's fortunes in light of AoA's declining sales.[4]  As such, this Court "cannot accept cursory contentions of wrongdoing as a substitute for the pleading of particularized facts."  Huang, 823 A.2d 492, 499.

## Investigation into and statements about claims

Plaintiff makes a pair of sweeping arguments in an effort to show that demand would have been futile.  First, plaintiff argues that demand should be excused because Arotech's Board of Directors intentionally "failed to launch an outside or independent investigation" into the conduct underlying the Securities Complaint.  (Compl. ¶ 68.)  As the Delaware Chancery Court has noted, "[t]o indulge this argument in this context would . . . undo a good deal of our settled law."  Desimone v. Barrows, 924 A.2d 908, 949 (Del. Ch. 2007).  Plaintiff certainly could have made a demand on Arotech's Board of Directors prior to filing the Derivative Complaint.  "Having forsaken that approach, [plaintiff] is not entitled to bypass the consequences of failing to plead demand excusal by making the accusation that [Arotech's] board has inadequately investigated his claims."  Id.  In the race to bring suit after this Court allowed the Securities Complaint to survive, plaintiff simply duplicated the Securities Complaint, added all current and former directors as defendants and tacked on an oversight claim.  It is plaintiff who apparently failed to investigate, such as by requesting inspection of Arotech's books and records.  Thus, plaintiff is unable to plead any facts about "what the [Arotech] board did, when they did it, what they discussed, what conclusions they reached, and why the board did or did not do anything."  Id. at 951.

Second, plaintiff argues that Arotech's Board was predisposed against this lawsuit, as shown by the Company's labeling the suit "without merit" in public filings.  For this Court to

---

[4] Although Arotech conceded that AoA's performance was disappointing, the subsidiary's collapse never was inevitable.  As plaintiffs' counsel in the securities action admitted, Arotech (through AoA) continued to obtain government business despite the T4D.

16

find that Arotech's Board of Directors effectively conceded demand futility, plaintiff "must allege particularized facts that support a factual finding that the board made the concession." Seminaris v. Landa, 662 A.2d 1350 (Del. Ch. 1995). Plaintiff's argument presents a proverbial Catch-22. On the one hand, if a derivative complaint is poorly pled or obviously fails to state a claim, the defendants cannot say so, or even move to dismiss, without risking conceding demand futility. On the other hand, a corporation's remaining silent could signal to investors, contrary to reality, that the company believes the claim to have merit. Plaintiff's "argument confuses futility with failure. . . . That the directors disagreed with an argument could show their unwillingness to listen, but also could show that [the plaintiff's] argument was feeble." Kamen v. Kemper Fin. Servs., Inc., 939 F.2d 458, 462 (7th Cir. 1991) ("To say that a demand would have been futile because directors proved unsympathetic to the lawsuit is like saying that sending Mickey Mantle to the plate with the bases loaded was futile because he struck out.").

On these facts, plaintiff has not shown that demand would be an "empty gesture." Blatt v. Dean Witter Intercapital, Inc., 528 F. Supp. 1152, 1155 (S.D.N.Y. 1982) (excusing demand where the corporate defendants' answer indicated that they had "consider[ed] all the pertinent facts," undertook a "thorough examination" of the challenged conduct, and "in fact" disagreed with the plaintiff on the merits, in a case where the court was "inclined to agree with plaintiffs that a demand on the directors" was not even required). Just as moving to dismiss based on the lack of a demand does not excuse demand, blanket statements indicating Arotech's willingness to defend against the Derivative Complaint "do not bring into question the independence and disinterestedness of the Board and cannot render a demand futile." In re Bear Stearns Co., Inc. Sec., Deriv. & ERISA Litig., — F. Supp. 2d —, 2011 WL 223540, at *104 (S.D.N.Y. 2011).

## Conclusion

Delaware's Supreme Court has called the demand requirement "a screening mechanism to eliminate claims" which are based on "a suspicion expressed solely in conclusory terms." Brehm, 746 A.2d at 255. The demand requirement plays precisely that envisioned role here. Because plaintiff has not provided "a reasonable basis to be entrusted with a claim that belongs to the corporation," id., the Court dismisses the Derivative Complaint without prejudice.

SO ORDERED.

Dated: Brooklyn, New York
      March 31, 2011

s/ Judge Raymond J. Dearie

RAYMOND J. DEARIE
United States District Judge